Raymond A. DAVIS, Plaintiff-Appellant,

v.

Viola Mae Davis BROUGHTON,
Defendant-Respondent.

No. 8305.

Springfield Court of Appeals.

Missouri.

Sept. 21, 1964.

J. W. Grossenheider, Lebanon, for plaintiff-appellant.

Neale, Newman, Bradshaw, Freeman & Neale, Springfield, for defendant-respondent.

STONE, Judge.

This is another knotty snarl in the tangled skein of postmarital troubles woven by Ray-

mond A. Davis and Viola Mae Davis (now Broughton).[1] The second marriage of these parties was terminated on April 16, 1960, by decree of the Circuit Court of Laclede County in Case No. 4365 instituted by Raymond, as plaintiff, against Viola Mae, as defendant. That decree granted a divorce to Raymond, awarded to him custody of two minor children, and closed with the paragraph (hereinafter referred to as the quoted paragraph) which spawned this litigation: "It is further ordered, adjudged, and decreed by the court that as a part of the property settlement herein, plaintiff agrees to pay the defendant $20 per week beginning April 23, 1960 and continuing until a final property settlement between the parties herein is consummated."

On December 27, 1962, Viola Mae filed in Case No. 4365 a "Motion for Attachment for Contempt," in which she alleged, inter alia, that Raymond had paid only the aggregate sum of $525 under the quoted paragraph, asserted his continuing obligation thereunder to pay $20 per week "until the conclusion" of Cases Nos. 6095 and 6148 (hereinafter sometimes referred to as the consolidated cases) theretofore instituted in the Circuit Court of Pulaski County and (on change of venue) tried in the Circuit Court of Phelps County but then pending and undetermined on appeal to this court [see Davis v. Broughton, Mo.App., 369 S.W.2d 857], and prayed for issuance of an order directing Raymond to show cause why he should not be punished for contempt in failing and refusing to make the aforesaid weekly payments and why the court should not "give such other and further relief as [might] be just and proper." Upon Viola Mae's said motion, the requested "Order to Show Cause" was issued and made returnable on January 12, 1963, on which date both parties appeared and testified.

In response to the inquiry of his counsel, "how much have you paid, if anything, to [Viola Mae] *by reason of this court's de-*

*cree ordering you to pay $20 per week* * * *,"* Raymond testified that he had paid the aggregate sum of $525 in cash, "plus $1,754 that I paid for a new car [for her], plus about $400 gas that I bought for the store [on her tract]," and "some insurance and taxes." Viola Mae admitted Raymond's payment of $525 in cash under the decree, but she insisted that none of the other expenditures by Raymond (i. e., for a new automobile, gas, insurance or taxes) had been made under or pursuant to the decree. In his examination of both parties, Raymond's counsel unsuccessfully sought to establish that his client's obligation under the quoted paragraph of the decree had been satisfied by such other expenditures, but it is conceded here (in the language of Raymond's brief) that there was no evidence that Viola Mae "agreed to accept anything other than cash as settlement of [Raymond's] obligation under the decree."

On October 14, 1963, the trial court filed a "Memorandum" embodying his written findings of fact and conclusions of law and entered a "Judgment" (which more appropriately might have been denominated a "special order after final judgment" [see V.A.M.S. § 512.020] and is hereinafter sometimes referred to as "the special order"), in which he "overruled and dismissed" Viola Mae's "Motion for Attachment for Contempt" but, after pointing out that the parties had agreed (as indeed they had in the trial court and do here) that "the court should find and adjudge in this proceeding the amount, if any, now owed by plaintiff to defendant under the original decree in this cause, dated April 16, 1960," fixed the amount owing on the date of the special order (i. e., on October 14, 1963) at $3,122.42, and ordered execution therefor. Plaintiff Raymond appeals.

 Lest our consideration of this appeal on its merits be misconstrued as impliedly approving the procedure adopted

---

1. For a better understanding of what is to follow in this opinion, the interested may refer to Davis v. Broughton, Mo.App., 369 S.W.2d 857.

by the parties, we note preliminarily that, although the overwhelming weight of authority elsewhere is to the contrary [annotation 30 A.L.R. 130], it has long been settled in Missouri that a judgment for alimony is simply a debt, within the meaning of the constitutional prohibition against imprisonment for debt [Mo.Const. of 1945, Art. 1, Sec. 11], and that payment of such judgment cannot be enforced in a contempt proceeding.[2] A fortiori, payment of a judgment incorporating or adopting valid contractual provisions settling property rights arising out of the marital relationship [cf. North v. North, 339 Mo. 1226, 1230, 100 S.W.2d 582, 584(1), 109 A.L.R. 1061; Alverson v. Alverson, Mo.App., 249 S.W.2d 472, 475(1, 2)] cannot be so enforced. Thus, the trial court properly "overruled and dismissed" Viola Mae's "Motion for Attachment for Contempt." But, since both parties admittedly regarded that motion simply as the procedural vehicle by which they might obtain judicial determination of the issue as to the amount owed by Raymond under the decree of April 16, 1960, and since that issue was, by agreement of the parties, tried at the hearing on January 12, 1963, and determined by the special order of October 14, 1963, we treat that issue as having been raised and presented properly by the motion. V.A.M.R. Rule 55.54; V.A.M.S. § 509.500.

■ Raymond's primary point on appeal is that the trial court erred in finding that he owed Viola Mae $3,122.42 because (in the language of his brief) "under the law and the evidence [she] having already put her claim in issue and having it decided, is estopped from prosecuting this action for the issue is res adjudicata." The essence of Raymond's argument is that, since, in

Viola Mae's action of ejectment (Case No. 6148 in the Circuit Court of Pulaski County), she had stated her then "understanding" that the $20 per week mentioned in the five-line handwritten agreement[3] prepared by Raymond's attorney and signed on April 4, 1960, was to be paid by Raymond for rent of the house on the tract in dispute, the judgment in Case No. 6148 denying Viola Mae's claim for rent [see Davis v. Broughton, supra, 369 S.W.2d loc. cit. 858] estopped her "from bringing this action or any further action concerning the obligation of the plaintiff to pay her $20 per week."

In support of this point, Raymond's counsel quotes extensively from Norwood v. Norwood, 353 Mo. 548, 557–558, 183 S.W. 2d 118, 122–123(4, 5): "Generally, in order to have *estoppel by a former judgment* (res adjudicata), there must be: (1) Identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. Rossi v. Davis et al., 345 Mo. 362, 133 S.W.2d 363, loc. cit. 373, 125 A.L.R. 1111, and cases there cited. * * * Res adjudicata may be as to a judgment or as to some particular facts litigated between the parties. (Citing cases)

" 'It is a fundamental principle of jurisprudence that material facts or questions which were in issue *in a former action*, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res adjudicata and may not again be litigated *in a subsequent action* between the same parties or their privies, regardless of the form the issue may take *in the subsequent action* * * *.' 30 Am. Jur., Judgments, § 178 [now 30A Am.Jur., Judgments, § 371, p. 411].

---

2. Coughlin v. Ehlert, 39 Mo. 285; Harrington v. Harrington, 233 Mo.App. 390, 394–395, 121 S.W.2d 291, 292–293(2); Francis v. Francis, 192 Mo.App. 710, 719, 179 S.W. 975, 977(1); Ex parte Kinsolving, 135 Mo.App. 631, 116 S.W. 1068(1). See Ex parte Fowler, 310 Mo. 339, 353–354, 275 S.W. 529, 533(7);

White v. Hutton, Mo.App., 240 S.W.2d 193, 200(8).

3. " '* * * Mr. Davis & Mrs. Davis agreed to have Mrs. Davis receive $20 per week until their property is sold and the proceeds divided.' " See Davis v. Broughton, supra, 369 S.W.2d loc. cit. 861.

" 'A fact or question which was actually and directly in issue *in a former suit,* and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein * * * and cannot be again litigated *in any future action* between such parties or privies * * *.' 34 C.J., § 1282, p. 868 [now 50 C.J.S. Judgments § 686, p. 141]." (All emphasis herein is ours.)[4]

Viewed in proper perspective, Raymond's plea of estoppel by judgment is that Viola Mae is precluded from recovering $20 per week under the quoted paragraph of the decree entered in the divorce suit (Case No. 4365 in the Circuit Court of Laclede County) on *April 16, 1960,* by reason of her *subsequent* testimony in the ejectment action (Case No. 6148 in the Circuit Court of Pulaski County) instituted on *September 14, 1961,* and determined in the trial court on *July 31, 1962.* But this plea of estoppel by judgment brushes aside the plain truth that the sole purpose of this after-judgment proceeding in Case No. 4365 has been and is to determine the amount owed by Raymond *under the decree of April 16, 1960,* and necessarily rests on the unjustified and unwarranted assumption that this after-judgment proceeding, begun as a civil contempt proceeding,[5] by the filing of Viola Mae's "Motion for Attachment for Contempt" on December 27, 1962, is a separate and independent action in which the meaning of *the handwritten agreement* and the rights and obligations of the parties thereunder are in issue.

Generally speaking, " 'a proceeding for contempt to enforce a remedy in a civil action is a proceeding in that action.' "

Odom v. Langston, 358 Mo. 241, 246, 213 S.W.2d 948, 951; 17 C.J.S. Contempt § 62(6), loc. cit. 159. See also 17 C.J.S. Contempt § 62(3), loc. cit. 151. Viola Mae's "Motion for Attachment for Contempt," which initiated the instant proceeding, was filed in Case No. 4365; the opening statement in the first numbered paragraph of the motion was that "on April 16, 1960, a decree was entered by this court in this cause * * *"; and nothing in the transcript on appeal, which bears the caption and file number of the divorce suit, indicates that the trial court or either litigant viewed this proceeding as a new and independent suit or regarded the validity or integrity of the decree of April 16, 1960, as in issue herein. Viola Mae's action of ejectment (Case No. 6148), instituted on *September 14, 1961,* and determined in the trial court on *July 31, 1962,* is *not* "a former judgment," and this after-judgment proceeding to ascertain the amount owed by Raymond under the decree entered in the divorce suit (Case No. 4365) on *April 16, 1960,* is *not* "a subsequent action," within the contemplation and meaning of those terms as used in the above-quoted statements of principle in Norwood, supra.

*Raymond did not in the trial court, and does not here, in any wise impugn the validity or integrity of the decree of April 16, 1960,* which (as to the obligation to pay $20 per week) in the absence of a motion for new trial became final thirty days after the date of entry. V.A.M.R. Rule 78.01. In the special order of October 14, 1963 (from which this appeal was taken), the trial court specifically found "that at the request of plaintiff herein, Raymond A. Davis, the decree in this cause, dated April

4. On this point Raymond's counsel also cites Reis v. La Presto, Mo., 324 S.W.2d 648; Ratermann v. Ratermann Realty & Inv. Co., Mo.App., 341 S.W.2d 280, 290–291(7–9); Whiteley v. Whiteley, Mo. App., 325 S.W.2d 502.

5. A civil contempt proceeding "is one instituted to preserve and enforce the rights of a private party to an action and to compel obedience to a judgment or decree intended to benefit such a private party litigant." State on inf. of McKittrick v. Koon, 356 Mo. 284, 301, 201 S.W.2d 446, 454(7); Middleton v. Tozer, Mo.App., 259 Mo. 80, 84(1). See Holt v. McLaughlin, 357 Mo. 844, 846, 210 S.W.2d 1006, 1007(3); 17 C.J.S. Contempt § 62(6), p. 157.

16, 1960, incorporated and approved that portion of the property settlement agreement of the parties [the five-line handwritten agreement of April 4, 1960] which required plaintiff [Raymond] to pay to defendant [Viola Mae] the sum of $20 per week beginning on April 23, 1960, and continuing until a final property settlement between the parties herein is consummated." Although the decree was not framed in the precise language of the handwritten agreement, there is no reasonable room for doubt but that the decree not only constituted judicial approval of the contractual obligation theretofore assumed by Raymond but also *reflected Raymond's then construction of the handwritten agreement.* For, Viola Mae was not represented by counsel either when the handwritten agreement was prepared by Raymond's attorney or when Raymond procured the divorce decree of April 16, 1960; she was not present in court when the divorce decree was entered; and Raymond and his attorney admittedly presented the handwritten agreement to the court and obtained the decree, which "incorporated and approved" (as the court found in the special order) the provision of the handwritten agreement for payment of $20 per week to Viola Mae.[6]

Almost sixteen months later, to wit, on *September 14, 1961,* Viola Mae instituted the action of ejectment (Case No. 6148 in the Circuit Court of Pulaski County), upon trial of which she expressed her then "ununderstanding" that the $20 per week mentioned in the five-line handwritten agreement of April 4, 1960, was to be paid by Raymond for rent of the house on the tract in dispute. But validity of the decree of April 16, 1960, in the divorce suit (Case No. 4365 in the Circuit Court of Laclede County) was not, and properly could not have been, challenged in the ejectment action (Case No. 6148), and nothing said by either party upon trial of Case No. 6148 as to his or her "understanding" of the meaning of the handwritten agreement could have affected the rights and obligations of the respective parties under the quoted paragraph of the decree in Case No. 4365, which had long since become final. For, when that portion of the handwritten agreement pertaining to payment of $20 per week to Viola Mae was "incorporated and approved" in the court's decree of April 16, 1960, it was merged or swallowed up in the decree, and the rights and obligations of the respective parties (as to such payments) thereafter were governed and controlled by the decree.[7] In fine, the instant record affords no basis for application of the principle of estoppel by judgment, and Raymond's primary point on this appeal must be disallowed.

■ However, Raymond argues secondarily that, if his plea of estoppel by judgment be denied, the amount found in the special order of October 14, 1963, to have been due under the quoted paragraph of the decree entered on April 16, 1960, should be reduced. The quoted paragraph fixed and limited the period during which Raymond was to pay $20 per week as "beginning April 23, 1960 and continuing until a final property settlement between the parties herein is consummated." Opposing counsel agree that, after entry of the decree on April 16, 1960, no final property settlement was consummated *voluntarily or by act of the parties. Viola Mae's* counsel assert, and the trial court found in the special order, that a final property settlement between the parties was consummated *by operation of law on August 5, 1963,* the date on which the

6. From the transcript in the consolidated cases (in evidence here by agreement of counsel), we find that Raymond answered in the affirmative when his counsel asked whether "we promised Mrs. Davis that we would see that he [the court] saw this [handwritten agreement] and incorporated this in the decree."

7. Luedde v. Luedde, 240 Mo.App. 69, 77, 211 S.W.2d 513, 517(4); Aronberg v. Aronberg, Mo.App., 316 S.W.2d 675, 680 (1); 50 C.J.S. Judgments § 599, pp. 20–21; Restatement, Judgments, § 47, p. 181; id., § 68, comment a, loc. cit. 294.

judgment in the consolidated cases became final upon appeal to this court. See again Davis v. Broughton, Mo.App., 369 S.W.2d 857. The theory of *Raymond's* attorney (as we understand it) is that Viola Mae's testimony upon trial of the consolidated cases (as he views it) showed that "the $20 per week obligation was to continue until the dispute as to the car, furniture and bank account was settled and * * * the disposition of the *real estate* had nothing to do with the [five-line handwritten] agreement"; that the judgment of the *circuit court* in the consolidated cases settled the rights of the parties with respect to *personal property* and, when Viola Mae did not appeal therefrom, became final *as to her on September 21, 1962;* and that "she is now estopped to assert any liability on the part of [Raymond] after * * * September 21, 1962." We observe parenthetically that, since the theories of both litigants rest on the common belief of interested counsel that "a final property settlement between the parties herein [was] consummated" *by operation of law at some stage of the consolidated cases,* we proceed on the same assumption without probing the legal validity thereof.

Raymond's argument on this point would send us back into the bewildering maze of testimonial conflicts and contrarieties into which we were driven in the consolidated cases. Davis v. Broughton, Mo.App., 369 S.W.2d 857. Having found our way out of the maze on that occasion, we decline Raymond's invitation to reenter it gratuitously. For, as on the appeal from the judgment in those cases we found positive resolution of the conflicts and contrarieties in the testimony unnecessary (although stating that, if essential to proper disposition of that appeal, we would have deferred to the finding of the trial court resolving the factual issues against Raymond [Davis, supra, 369 S.W. 2d loc. cit. 862]), we again think it needless to decide whose testimonial version of the facts should be accepted—a happy circumstance from our standpoint since *certain portions* of *each* version would not be too palatable to us even if seasoned with the proverbial grain of salt.

However, it may not be amiss to note, in passing, that *some segments* of *each* testimonial version in the consolidated cases would afford support for the criticized finding of the trial court in the special order under review. *Raymond* said that he was to pay $20 per week until the tract, on which the dwelling house occupied by him and the children was situate, was sold and the proceeds of sale were "equally divided," and that "there was no limit set on the time that we *was* to live there * * * until the property was sold." True, *Viola Mae* stated that Raymond's payments of $20 per week were "for rent so that I could pay my rent someplace else"; but, more importantly, the clear import of her testimony was that, however long Raymond's occupancy of the dwelling house on her tract might be prolonged, *he was to continue the weekly payments until his tenancy terminated.* Admittedly, Raymond did *not* surrender possession of the dwelling house when the trial court entered judgment in the consolidated cases on July 31, 1962, denying his claim to an equitable lien on the real estate owned by Viola Mae and directing restitution of possession to her. Davis, supra, 369 S.W. 2d loc. cit. 858. Rather, at the hearing in the instant proceeding on January 12, 1963, Raymond quickly conceded that he still resided in the same dwelling house, and nothing in the record before us suggests that he surrendered possession of that house prior to August 5, 1963, when the judgment in the consolidated cases became final.

Regardless of what was said or claimed by the respective parties upon trial of the consolidated cases, we remain mindful that the five-line handwritten agreement was merged or swallowed up in the decree entered in Case No. 4365 on April 16, 1960, and that it was *at Raymond's behest and by his invitation* that the language of the decree (i. e., that Raymond was to pay $20 per week "beginning April 23, 1960 and continuing until a final property settlement between the parties herein is consummated") was spread

with the same broad brush used by counsel in the handwritten agreement. The plain common sense of the matter (which neither courts nor counsel should view with scorn or disdain) would seem to be that it could not well be said that there had been "a *final* property settlement between the parties" until there had been a *final* determination of all disputed issues in the consolidated cases; and, with *Raymond* still occupying the dwelling house on Viola Mae's real estate and still insisting that he was entitled to an undivided one-half interest therein, there certainly was no such *final* determination prior to *August 5, 1963*, when the judgment in the consolidated cases became final upon appeal.

Being unable to say in this court-tried proceeding that the special order of October 14, 1963, was "clearly erroneous" [V.A. M.R. Rule 73.01(d); V.A.M.S. § 510.310 (4)], it becomes our duty to affirm. It is so ordered.

RUARK, P. J., and HOGAN, J., concur.