Leona Nell JAFARIAN–KERMAN,
Appellant,

v.

Mohammed Resa JAFARIAN–KERMAN,
alias Jeff Kerman, Respondent.

No. 24878.

Kansas City Court of Appeals.
Missouri.

Dec. 4, 1967.

Motions to Modify Opinion and for Rehearing Denied Feb. 5, 1968.

 

Louis Kranitz, Theodore M. Kranitz, St. Joseph, for appellant.

Raymond W. Eckles, Maryville, for respondent.

## PER CURIAM.

The plaintiff-appellant, having prevailed in her action for divorce, child custody, support and maintenance and attorney's fees and costs, sought additional relief touching certain excluded evidence, additional attorney's fees and a judgment of contempt against defendant-respondent. She appeals from the court's refusal to grant her such additional relief.

A motion to affirm the judgment of the court and to dismiss the appeal was filed by defendant-respondent, which this court took under advisement with the case. Since the disposition of the points raised in the appeal disposes of the grounds of the motion, the same will be considered in the appeal and the motion to affirm and dismiss the appeal is hereby overruled.

For convenience the parties plaintiff-appellant and defendant-respondent will hereinafter be referred to respectively as plaintiff and defendant. According to the petition and proof the parties had married in 1960 and separated in 1966. They had one child, Steven, aged four years at the time of trial. Plaintiff had become pregnant again but the child of that pregnancy had died shortly after the bringing of the divorce suit. The petition alleged a course of indignities and cruel treatment of plaintiff on defendant's part. The prayer sought a decree of divorce, allowances for support and maintenance, custody of the child Steven, attorney's fees, suit money and costs.

On the same day the petition was filed, plaintiff filed a motion for temporary custody of her child, Steven, and prayed for a temporary restraining order against the defendant, based on allegations of threats by defendant to kill her if the divorce action were pursued. The order sought was to restrain defendant from threatening plaintiff or in any way disturbing the peace or property of the plaintiff or inflicting any bodily harm upon her or her said child Steven, or interfering with her enjoyment of any premises which she may occupy.

The above motion was sustained. The court's orders included a restraining order and temporary injunction as prayed, effective upon the filing of a $100 bond by plaintiff, which was accordingly filed and approved on the same day.

Defendant engaged counsel and filed answer and cross-petition in the cause, charging plaintiff with association with other men, alleging vicious conduct on her part toward defendant and their child; that she had appropriated much of the joint funds and property of the parties, and that she had threatened his arrest and assault if he filed for divorce. To this pleading plaintiff filed reply, denying the charges made by defendant and filed a motion for temporary alimony.

Both parties appeared in person and by counsel at the hearing on plaintiff's motion for the temporary orders. On that motion the court awarded plaintiff $40 per week for her support and $200 temporary attorney's fees, granted her temporary custody of the child, Steven, with visitation privileges to the defendant to take the child on Friday, September 23, 1966, at 4:00 p. m. and to return him to plaintiff at 4:00 p. m. the next day and likewise each week thereafter during such corresponding days and hours.

On October 31, 1966, plaintiff filed a motion, alleging that defendant had received custody of the child, Steven, on October 28, 1966, under the privilege awarded him, but had failed to return the child since or to communicate with plaintiff, and that the

whereabouts of the defendant and the child were unknown to her; that she was then again in a pregnant state and caused to suffer nervousness and distress over the situation; that defendant had willfully disobeyed the mandate of the court in the premises. The motion prayed that defendant be adjudged in contempt of court and punished therefor; that the defendant's visitation rights granted him be terminated and that he be ordered to return the child to plaintiff. The motion sought additional attorney's fees to be incurred in the investigation of the child's whereabouts.

On the same date the court issued its order on defendant to appear on November 2, 1966, and to show cause why he should not be adjudged guilty of contempt of court and punished accordingly for willfully disobeying the orders of the court as described in a copy of the motion of plaintiff therefor, attached. The sheriff's return on the order to show cause showed failure to serve the same because, after diligent search, defendant was not found in his county.

Plaintiff filed a memorandum with the court, advising it of her intention, at the trial of her divorce case, to call as her witness defendant's attorney of record, on the sole matter of his knowledge of defendant's whereabouts, citing authorities for the court's consideration.

Thereupon the court issued its order of attachment, commanding the sheriff to attach the child, Steven, if he might be found in his bailiwick, and keep him so that he could appear in plaintiff's case.

At the trial of the divorce case plaintiff appeared in person and by attorney and defendant appeared only by his attorney. Plaintiff's attorney advised the court that he intended also to take up the matter of the pending motion to find defendant guilty of contempt and to punish him therefor. The court inquired: "Do you have service?" To this plaintiff's attorney said: "It is not necessary". Asked by the court for any comments, defendant's attorney stated: "My client is not here—he is out of the United States. The matter arose after he left the country and no service, I am sure, has been had. I think we would have to have service". He said he had no objection to proceeding with the divorce action.

Plaintiff introduced, without objection, an unserved warrant issued by a magistrate for defendant's arrest on a charge of "enticing away of a minor child", and a felony complaint issued on the order of the plaintiff, charging him with fraudulent, forcible and malicious removal of plaintiff's child in violation of the order of the court. The plaintiff then testified generally to the grounds alleged in her divorce petition, tending to sustain the same, not necessary here to state. In the course of her testimony she introduced, without objection, a copy of a letter from the defendant to his attorney of record, who had sent the copy to her. It was dated November 1, 1966, at Munchen, Germany. She had used it in connection with her investigation of the whereabouts of her child, Steven, conducted for her by New York attorneys. She said defendant's attorney had sent it to her but had admitted it was not a complete copy. The letter stated that defendant and the boy had left the United States October 29, 1966; that they were going to leave Germany and go to some other country; that the child was well and happy; that counsel should tell plaintiff to keep her lawyer out of the matter and if so, he would agree to pay her $500 for "four terms", or $125 every three months for five years and no more; that he would pay her attorney $100 and would pay $150 for medical expenses this time and no more; that she should be told that if she did not agree to the above she "would not see me or Steven ever", and if she tried to cause him any trouble they would go to some foreign country where nobody could do anything about their matters. The letter stated plaintiff could proceed with the divorce on the above terms, and suggested that plaintiff, before the divorce, obtain from the

United States Immigration office a "waiver" of his return to the United States.

Plaintiff also introduced in evidence a bill from the New York attorneys for $475 for services in connection with the investigation of the whereabouts of plaintiff's child, Steven. In that connection she stated that investigation showed that defendant took the child on a Friday in October, 1966, and on the next day telephoned plaintiff's stepfather that he would be a little late returning the child as he was having trouble with his car.

Defendant's counsel was called as a witness in the trial of the divorce action. He identified the copy of the letter to him from defendant dated November 1, 1966, which copy he had sent to plaintiff. He stated that it was not complete; that he had received three letters from defendant, dated respectively, on November 1, November 18, and December 26, 1966. He said the letter of November 18, contained an address "more or less general". When asked what that address was, he said: "At this point I claim attorney-client privilege". The court sustained his claim of privilege. The counsel for plaintiff argued that defendant had been shown charged with felony, was a fugitive from justice and that his counsel could not claim an attorney-client privilege. The matter was discussed at length by the court and plaintiff's counsel, but the ruling remained unchanged.

Being recalled to the witness stand, plaintiff testified as to her lack of sufficient funds for support of herself and child, if the child be returned, and her need of funds to pay her attorney's fees. Upon inquiry by the court, her attorney said his fees should be $1,000, less $200 already paid to him. He outlined his various services in the case, including the matter of defendant's removal of the child and investigation of its whereabouts. He said he understood defendant's income to be $100 a week. He said defendant's counsel had shown him defendant's letter of November 1 and that he had seen in said counsel's possession a letter from defendant dated November 18.

He said defendant's counsel told him that defendant at that time was in Germany.

The court asked defendant's counsel his opinion of the amount plaintiff's attorney's fee should be and counsel said: "I should say $500.00".

The decree of the court awarded plaintiff a divorce, granted her full custody of her child, Steven, allowed her $20 per week for support of the child, $300 additional attorney's fees and a judgment for $475 gross alimony and costs. The court specifically decreed that defendant should have no further right of visitation of the child, Steven, until further order of the court.

The plaintiff's attorney thereupon urged the court to include in its decree a finding that defendant was guilty of contempt of court, of which he might purge himself by presenting himself in court at a specified time. Defendant's counsel stated: "I do admit he is not in the jurisdiction of this court and that he did violate the court's order and I stop there". The court said defendant's counsel had suggested to the court that the decree include a finding that the defendant was in contempt and to mete out an appropriate punishment but, the court said, "He doesn't know whether his client has some defects, such as insanity, or an illness that caused him to go into contempt". The judge said he was in doubt as to whether the court could make a valid order upon the motion to show cause since there had been no service of notice of the order. The motion for the court to issue a citation for contempt was then overruled. The court then related a conversation had in his chambers with defendant's counsel wherein the latter expressed regret over his client's disappearance and tendered his best efforts to do whatever he could to persuade defendant to return.

Defendant filed no brief in this appeal nor did his counsel personally appear when it was set for argument. His counsel did, however, file in this court defendant's motion to affirm the judgment and to dismiss the appeal, as we have noted.

Plaintiff's first point of error is that the court improperly excluded material evidence of the whereabouts of the defendant, sought to be elicited from the testimony of defendant's counsel at the trial. As we have stated, the attorney for defendant admitted having received three letters from defendant in Germany since the latter's departure, in one of which was an address given "more or less general". When asked what that address was, he claimed privileged communication between attorney and client. His contention was sustained by the court.

It is provided in Section 491.060, RSMo 1959, V.A.M.S.:

"The following persons shall be incompetent to testify: * * * (3). An attorney, concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client; * * *".

Plaintiff cites Supreme Court Rule 4.41, V.A.M.S., which reads as follows:

"When a lawyer discovers that some fraud or deception has been practiced, which has unjustly imposed upon the court or a party, he should endeavor to rectify it; at first by advising his client, and if his client refuses to forego the advantage thus unjustly gained, he should promptly inform the injured person or his counsel, so that they may take appropriate steps".

So far as Rule 4.41 applied to the instant situation, it will be recalled that defendant's counsel did inform both the court and the plaintiff of defendant's departure, of his general whereabouts in Germany, of the well-being of the infant child, of defendant's proposals for the disposition of the divorce matters, and that counsel did offer to the court to do whatever he could to persuade defendant to return. He reserved only the exact location of his client, presumed to have been shown in one of the letters received by him from the defendant.

The question with which we are here confronted is whether, under all the circumstances in evidence, the knowledge of defendant's attorney of the address of defendant, as communicated by defendant to counsel by letter, is privileged within the provisions of the rule and statute aforesaid.

The general rule of privileged communications existing between attorney and client is stated by the Supreme Court of Missouri in Gebhardt v. United Railways Co. of St. Louis, 220 S.W. 677, 679, as follows:

"It is true that after a crime has been committed the accused or guilty person may freely consult and even disclose his guilt to his attorney, in order to prepare his defense. In such circumstances, the law puts the seal of secrecy upon such communications. But neither under our statute, R.S.Mo.1909, § 6362, nor at common law, of which said statute is simply declaratory, can a person employ an attorney for the purpose of aiding and abetting him in the commission of a future crime or fraud, and thereby seal the lips of his lawyer to secrecy and thus prevent the exposure or detection of such crime or fraud. The privileged communication may be a shield of defense as to crime already committed, but it cannot be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society".

The Gebhardt case was cited and applied in Burger v. Crocker, Mo.App., 392 S.W.2d 640, 641.

The evidence in the instant case will not justify a conclusion that defendant's counsel was employed by defendant to aid and abet him in the commission of any crime or fraud *then contemplated*. In fact, the record tends to show the contrary.

It will be noted that the statute (now Section 491.060, RSMo 1959, V.A. M.S.) referred to by the Supreme Court in the Gebhardt case, supra, was construed by

the court therein to be merely declaratory of the common law rule. The general rule, as applied more particularly to the present case, is stated as follows:

"If the client's residence has been concealed, or if the client is hiding for some reason or other, and the attorney knows his address only because the client has communicated it to him confidentially as his attorney for the purpose of being advised by him, and has not communicated it to the rest of the world, then the client's address is a matter of professional confidence, which the attorney may not be required to disclose". 97 C.J.S. Witnesses § 286, p. 812.

■ That such privilege applies to letters passed between attorney and client is ruled in Ex parte Schneider, Mo.App., 294 S.W. 736, 738. In that case the court also considered the statute referred to as merely declaratory of the common law rule of privileged communications, which rule, it was said, should be construed with reference to the policy supporting it, namely, to secure all men in the full enjoyment of their civil rights. As such, the court said, the rule is subject to certain exceptions (1. c. 738, 739) such as plaintiff's knowledge of a suit pending against him, pretrial examination, security for costs, fixing the venue, jurisdiction, service of order to pay costs, counsel fees and alimony pendente lite, and "to obtain service of an injunction in aid of the administration of justice".

Several facts obtain in the case at bar which bear upon the applicability herein of the rule of privileged communications between attorney and client. Defendant, under his pleadings, was himself seeking an award of custody of the child, Steven. He was under a restraining order of the court prohibiting him from inflicting any bodily harm upon the child or disturbing the peace of the plaintiff. He sought and obtained an order of the court granting him limited custody of the child pending the divorce suits. The child had become a ward of the court, to become subject to the court's final decree in the proceedings. Gaining possession of the child under his privilege, he left the United States surreptitiously, taking the child with him to Germany at some address unknown to the plaintiff or the court. Such conduct of the defendant was a malicious and wanton infraction of the court's orders and a brazen obstruction of the administration of justice.

■ That the statute and rule of privileged communications between attorney and client are subject to exceptions under certain conditions is generally so construed in many jurisdictions, as reviewed in 114 A. L.R. 1328. In a very early case in this court, in an opinion by Judge Ellison, the rule in its historical aspects was reviewed and it was ruled that "if the client consults the lawyer with reference to the perpetration of a crime, and they co-operate in effecting it, there is no privilege. If he refuses to be a party to the act, still there is no privilege, because he cannot properly be consulted professionally to aid in the perpetration of a crime, and a case of fraud should fall within the same rule". Hamil & Co. v. England, 50 Mo.App. 338, 346. Where the mother of two children, wards of the court, had absconded with them and concealed her address, but had communicated the same by letter to counsel, the communications were ruled as not privileged under the rule. Ramsbotham v. Senior (1869) L.R. 8 Eq. (Eng.) p. 575.

■ Holding that the statute in question is subject to exceptions, the Supreme Court, in an opinion by Judge Gantt, ruled that it is merely declaratory of the general rule, "and in no manner affects the exceptions to the general rule excluding such communications. * * *. It has no reference to communications by a client to his attorney in furtherance of a crime or fraud. * * *. The reason on which the rule is said to rest cannot include the case of communications criminal in themselves, or intended to further any criminal purpose, for the protection of such communications cannot possibly be otherwise than in-

jurious to the interests of justice and to the administration of justice". State v. Faulkner, 175 Mo. 546, 75 S.W. 116, 132. The question is a legal one for determination by the court. Bussen v. Del Commune, 239 Mo.App. 859, 199 S.W.2d 13, 21; Hull v. Lyon, 27 Mo. 570. In Hickman v. Green, 123 Mo. 165, 22 S.W. 455, 458, 29 L.R.A. 39, the court, considering privileged communications between attorney and client, said: "The privilege does not extend to, nor shelter, advice concerning, nor assistance in, proposed infractions of the law. (citations)".

■ We hold that, under the circumstances shown of record, the address of defendant as supplied by his letter or letters to his counsel was not privileged communications within the purview of the rule· and statute aforesaid. The court accordingly erred in declining to require defendant's counsel to disclose by his testimony, his information of the defendant's precise whereabouts.

■ Plaintiff's second point of error is that the court abused its discretion in limiting plaintiff's allowances of additional attorney's fees to $300. That allowance, plus a previous allowance of $200, made a total fee of $500. Plaintiff's counsel outlined to the court a lengthy and detailed statement of the services he had rendered plaintiff and his estimate of $1,000 as their reasonable value. The opinion of the defendant's attorney was asked for by the court and was considered by it. It was stated in Agnew v. Johnson, 352 Mo. 222, 176 S.W.2d 489, 493:

"* * * courts are themselves experts on the question of attorneys' fees and the judge who personally tries a case and is acquainted with all the issues involved is in a position to fix the amount of attorneys' fees without the aid of evidence".

The same language was adopted in Gross v. Gross, Mo.App., 319 S.W.2d 880, 886. See also Fisher v. Peterson, Mo.App., 240 S.W.2d 176. The allowance on its face does not appear unreasonable. The point is overruled.

The plaintiff's third point of error is that the court erred in refusing to rule defendant in contempt of court and in overruling plaintiff's motion to that end. As shown by the record, the matter of temporary restraining order was first introduced in the case by plaintiff's motion filed with her divorce petition, in which motion she sought temporary custody of the child, Steven, and a restraining order preventing defendant from disturbing her and her temporary custody of their child, and which motion was sustained by the court upon the filing of plaintiff's bond, which was approved. As a further part of the divorce case as we have noted, the defendant in his answer and crossbill, asked for the custody of the child. Thereafter plaintiff moved for an order of temporary alimony and other relief, on which the court, among other things, granted plaintiff temporary custody of the child, with visitation privilege to the defendant, as shown.

Upon plaintiff's motion then filed, alleging defendant's violation of the court's previous order of child custody and her prayer for a finding of contempt of court on defendant's part, the court issued its order upon the defendant to appear and show cause why he should not be found guilty of contempt. For want of service of the notice to show cause, the court declined to make any further orders or findings on the charge of contempt.

■ The contempt charged in the present case is a constructive civil contempt defined as "* * * where a person fails or refuses to do something which he has been ordered to do, or has done something he has been ordered not to do for the benefit of the opposite party to a cause. In civil contempts the object of the punishment is for the purpose of coercing the performance of an act remedial in its nature". Ex parte Clark, 208 Mo. 121, 106 S.W. 990, 996, 15 L.R.A.,N.S., 389. See

also Bender v. Young, Mo.Sup., 252 S.W. 691, 693. It is distinguished from a direct contempt in that the contempt complained of in direct contempt takes place in the presence of the court in defiance of the power and authority of the court. See State ex rel. Chicago, B. & Q. R. Co. v. Bland, 189 Mo. 197, 88 S.W. 28; 17 C.J.S. Contempt § 3, pp. 8, 9; Curtis v. Tozer, Mo.App., 374 S.W.2d 557.

A question of jurisdiction here arises which the court must first consider, even of its own volition. Does the trial court's failure to find the defendant guilty of contempt and its failure to sustain plaintiff's motion to that end constitute a part of the divorce suit, which is the main subject of this appeal, or was it an independent action not reviewable in an appeal from the divorce decree? There are various rulings in different states under various circumstances on such jurisdictional issue. The rule in this state, however, has been settled so far as comparable facts and circumstances are concerned.

 As stated, the purpose of a proceeding in civil contempt is primarily to preserve and enforce the rights of a private party to the action. The real party in interest is the party litigant, whose rights in the premises are claimed to have been violated. Middleton v. Tozer, Mo.App., 259 S.W.2d 80; Holt v. McLaughlin, 357 Mo. 844, 210 S.W.2d 1006; State, on Inf. of McKittrick v. Koon, 356 Mo. 284, 201 S.W.2d 446; 17 C.J.S. Contempt § 62(6), pp. 157–160. The contempt proceeding is an additional remedy afforded by law and is auxiliary to the main action. It is not necessary to docket and to pursue an independent action to enforce a rule which has been violated. Odom v. Langston, 358 Mo. 241, 213 S.W.2d 948; Davis v. Broughton, Mo.App., 382 S.W.2d 219, 222. This rule is not affected by the power of the court itself to initiate civil contempt proceedings to enforce compliance, nor by the fact that new issues and service may be involved. 17 C.J.S. Contempt § 63, p. 162. Hence, in

the appeal in the instant case we entertain plaintiff's third point of error.

It is provided in Section 476.130, RSMo 1959, V.A.M.S.:

"Contempt committed in the immediate view and presence of the court, may be punished summarily; in other cases the party charged shall be notified of the accusation, and have a reasonable time to make his defense".

"Before a person can be found guilty of a contempt not committed in the presence of the court, he must have due and reasonable notice of the proceeding. So, ordinarily, there should issue an attachment, or a rule or order to show cause why defendant should not be punished or why an attachment should not issue, or other process, the proper or permissible form or forms of process varying with the local practice. * * * The court may order the rule to show cause to be renewed where the original could not be served in time; * * *". 17 C.J.S. Contempt § 77, pp. 194, 195.

 This court said in substance, in Sands v. Richardson, Mo.App., 252 S.W. 990, 994, that even civil contempts are considered criminal in nature in that they concern commitments under which persons may be restrained of their liberty, and that persons charged with indirect contempt are entitled to notice and reasonable time to defend, which notice " * * * means a reasonable notice, one which will fairly and fully enable the party cited to know the specific acts he is charged with and be thereby enabled to prepare his defense". Citing that case the court said in G —— v. Souder, Mo.App., 305 S.W.2d 883, 886, that in a charge of indirect contempt a mere showing that the accused was in the court at the time of trial and had knowledge of "what was going on" did not satisfy the requirement of notice informing him of the charges made, but the law contemplates a notice in writing, fairly informing him of the specific acts of contempt with which he is charged.

The great weight of authority sustains the action of the court in the case at bar in refusing to take further action on the order to show cause in the absence of any service of the same upon the defendant.

Whether the court under its continuous jurisdiction over the custody of the plaintiff's minor child until his majority, or under its power and authority to enforce performance of its orders and judgments, or, at the instance of the plaintiff, pursues further proceedings in the contempt charge are matters for consideration and determination in such event.

The judgment is affirmed and the cause is remanded for the purpose only of further and prompt proceedings by the court requiring defendant's counsel to disclose to the court his information as to the precise whereabouts of the defendant and Steven, the minor child of the parties, as communicated to him by the defendant.