Stanley Golminas, Plaintiff-Appellee, v. Fred Teitelbaum Construction Company, a Corporation, Defendant, and The Patent Scaffolding Co., Inc., a Corporation, Royal Continental & Sons, Inc., a Corporation, Defendants-Third-Party Plaintiffs, v. Main Electric Company, Inc., Third-Party Defendant-Appellant. People of the State of Illinois, Petitioner-Appellee, v. Leonel I. Hatch, Jr., Attorney, Respondent-Appellant.

Gen. No. 53,642.

First District, Third Division.

June 26, 1969.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (John M. Moelmann, Leonel I. Hatch, Jr. and Karl M. Tippet, of counsel), for appellant.

William J. Harte and Roger J. Boylan, of Chicago (Roger J. Boylan, William J. Harte, Howard S. Chapman,

John J. Kennelly and A. L. Cronin, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal by third-party defendant Main Electric Company, Inc. and its attorney, Leonel I. Hatch, Jr., from an order of the Circuit Court holding Leonel I. Hatch, Jr. in contempt of court and assessing a fine of $50 for his refusal to comply with the court's order to produce statements made by four employees of Main Electric. The initial appeal was taken to the Supreme Court, and the Supreme Court transferred the case to this court after finding that it had no jurisdiction to entertain the direct appeal.

The plaintiff, Stanley Golminas, filed suit seeking damages for injuries allegedly occasioned by the defendants' willful violations of the Illinois Structural Work Act. Three of the defendants brought a third-party action against Main Electric. During pretrial discovery the plaintiff and other parties moved for the third-party defendant's production of statements taken from witnesses to the occurrence. The motion judge ordered Main Electric by its attorney, Leonel I. Hatch, to produce statements of four of its employees but excused the third-party defendant from producing the statements of those persons who were "officers, directors, managing agents, or foremen" of Main Electric. In his affidavit Hatch admitted that these four employees were not officers, directors, managing agents, or foremen of Main Electric but he refused to produce their statements. The record is totally silent as to the employment status and duties of these four employees and does not disclose their connection, if any, with the occurrence.

The sole issue before this court is whether the statements of these employees of the corporate third-party defendant were privileged communications under Supreme

446

Court Rule 201(b)(2). During the pretrial proceedings Main Electric had argued that these statements were part of the attorney's "work product." This contention has been abandoned on appeal, and it is now contended that the order requiring production was erroneous because the statements demanded were within the scope of the attorney-client privilege and because the production of such statements would deprive the corporate third-party defendant of equal protection of the laws under the Illinois and United States Constitutions.

Difficulties arise in an attempt to delineate the permissible breadth of the attorney-client privilege when applied to a corporate client. The acknowledged purpose of the privilege is to encourage and to enable free and full disclosure by the client to his attorney of matters relevant to the giving of legal advice, and today it is well settled that the privilege can be invoked by a corporate client. (Radiant Burners, Inc. v. American Gas Ass'n, 320 F2d 314; Day v. Illinois Power Co., 50 Ill App2d 52, 199 NE2d 802.) But when an employee of the corporation communicates facts to a lawyer retained by the corporation relative to pending or potential litigation the question arises: Was this employee speaking for the corporation when he made the communications? In view of the size of the modern corporation, its often intricate and overlapping chain of command, and the myriad of employees of varying rank and designations, an answer to this inquiry is conceptually challenging. The problem of the confidentiality of communications in the corporate chain of command confronted Judge Kirkpatrick in City of Philadelphia v. Westinghouse Elec. Corp., 210 F Supp 483 (E. D. Pennsylvania, 1962) wherein he stated at page 485:

"Keeping in mind that the question is, Is it the corporation which is seeking the lawyer's advice when the asserted privileged communication is made?, *the most satisfactory solution, I think, is that if the em-*

447

*ployee making the communication, of whatever rank he may be, is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority, then, in effect, he is (or personifies) the corporation when he makes his disclosure to the lawyer and the privilege would apply.* In all other cases the employee would be merely giving information to the lawyer to enable the latter to advise those in the corporation having the authority to act or refrain from acting on the advice." (Emphasis supplied.)

(Accord: Natta v. Hogan, 392 F2d 686; Garrison v. General Motors Corp., 213 F Supp 515.)

In Day v. Illinois Power Co., supra, the Appellate Court, expressly adopted the "control group" test as enunciated in the Westinghouse and Garrison decisions and, in concluding that the attorney-client privilege did not apply, stated at page 59:

"There is nothing in the record before us to indicate that the employees and agents of the defendant power company, who investigated the explosion, repaired or replaced the ruptured gas line here involved and transmitted reports to M. Ducey, Attorney for the power company, had any authority whatsoever, either actual or apparent, to make any judgment or decision as to any action to be taken by the corporation on the advice of its attorney."

■ Main Electric and its attorney wish this court to adopt the view that the attorney-client privilege as applied to corporate clients is so broad as to encompass all communications made to the attorney representing the corporation by any employee regardless of his rank or corporate responsibilities and duties. We reject such a view. We are cognizant of the enlargement of free dis-

448

covery embodied in Monier v. Chamberlain, 35 Ill2d 351, 221 NE2d 410, and we are also aware of Wigmore's admonition which was quoted in Radiant Burners, Inc. v. American Gas Ass'n, supra, at page 323:

> " 'Nevertheless, the privilege remains an exception to the general duty to disclose. Its benefits are indirect and speculative; its obstruction is plain and concrete. Even the answers to Bentham's argument concede that the privilege is well founded in its application to a certain proportion of cases. It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principal.' 8 Wigmore, Sec 2291, at 554, citing Foster v. Hall, 12 Pick 89, 29 Mass 89, 97 (1831), ('The rule of privilege, having a tendency to prevent the full disclosure of truth, ought to be construed strictly')."

We are of the opinion that under the facts in the Day case and under the facts presented in the instant case, the "control group" standard adequately defines the scope of the privilege as applied to the corporate client. In this case, as in the Day case, there is nothing in the record to indicate that the employees whose statements were not produced by Main Electric and its attorney had any authority to make any judgment or decision as to any action which might be taken by Main Electric upon the advice of its attorney. However, in so holding we do not mean to imply that communications by an employee of a corporation who does not come within the "control group" definition may never be privileged. For example, the principle underlying the attorney-client privilege would demand that an employee's communications should be privileged when the employee of the defendant corporation is also a defendant or is a person

who may be charged with liability and makes statements regarding facts with which he or his employer may be charged, which statements are given or delivered to the attorney who represents either or both of them. (See: D. I. Chadbourne, Inc. v. Superior Court of City and County of San Francisco, 60 Cal2d 723, 36 Cal Rptr 468, 388 P2d 700.) Again, however, the record is barren of any indication that any or all of the four employees of the third-party defendant were employees who could have been charged with liability in the instant cause. A review of the record forces us to conclude that the motion judge was not in error in ordering the production of the statements of these employees which are in the possession of Main Electric and its attorney.

We also find no merit to the contention that the order appealed from deprived the corporate third-party defendant of equal protection of the laws. The appellants argue that the instant order grants more extensive discovery against it, a corporation comprised of many employees, than would be the case if the third-party defendant were an individual or sole proprietorship. It must be conceded that the possibility for more extensive discovery in the case of a corporate party rests on the unalterable fact that a modern, public corporation often employs more people from whom discovery may be sought. However, to blanket as privileged all disclosures made by all "employees" of the corporation to its attorney in a case such as this would be to allow corporations to insulate all their activities from discovery by simply discussing them with legal advisors. Such a result would discriminate against the noncorporate plaintiff or defendant in favor of the corporate client.

The plaintiff, Stanley Golminas, had filed a cross-appeal in the Supreme Court and asserted as error that portion of the lower court's order which excused Main Electric from producing statements of its managing agents and foremen. The cross-appeal was dismissed

by the Supreme Court as not timely under Supreme Court Rule 303(b). Therefore, the issue raised by the cross-appeal is not before this court on transfer from the Supreme Court.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.