NELLIE COX, Plaintiff-Appellant, *v.* YELLOW CAB COMPANY, Defendant-Appellee.

(No. 56275;

First District (3rd Division)—December 20, 1973.

*Rehearing denied February 4, 1974.*

Joseph A. Rosin, of Chicago, for appellant.

. Jacobs, Williams and Montgomery, Ltd., and Barry Kroll, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

In this personal injury action, which was tried before a jury, the plaintiff, Nellie Cox appeals from a judgment entered in favor of the defendant, Yellow Cab Company. Her complaint was in two counts. Count one alleged that the defendant, through its agents, was guilty of specific negligent acts of commission or omission in the operation of its taxicab in which the plaintiff was a passenger, proximately causing her injury. Count two alleged general negligence.

In August 1964 the plaintiff received a phone call from her cousin, Mary Giles, who needed assistance in taking her father to a hospital. The plaintiff called a Yellow Cab and walked to the Giles' home a few doors away, where the cab picked up Mary, her father and the plaintiff. Mary was seated in the front seat of the cab, and her father and the plaintiff occupied the rear seat. The cab proceeded east on Roosevelt Road, a four-lane thoroughfare. Abe Freeman, the driver, drove the cab in the lane closest to the center of the street until he neared the intersection of Roosevelt Road and Paulina Street. Traffic was moderate and there were no cars to his right. Mary Giles testified that as the cab approached the Paulina intersection she noticed an automobile in the same lane as the cab, one-half block ahead of it, but traveling considerably slower.

She estimated the cab's speed at about 40 miles an hour, and that of the automobile at 15 to 20 miles an hour. When the cab was a couple of car lengths behind the automobile, the automobile stopped. The cab driver slammed on his brakes, held out his hand, said "watch out", and skidded to within a foot of the auto before he brought the cab to a halt. After the cab stopped, Mary turned around; she saw her father lying on the back seat and her cousin on the floor. Nellie Cox testified that when the driver "threw on" the brakes she was thrown off the seat onto the floor and her back was injured.

Freeman, the only other eyewitness to testify, stated that his cab and the automobile which was three car lengths ahead were traveling at approximately the same speed, about 20 or 25 miles an hour. At Paulina another car suddenly cut in front of the automobile causing it to skid and stop. Freeman applied his brakes and stopped three or four feet behind the auto. He then drove across Paulina and stopped on the other side. He asked if anyone was hurt and Cox said that she had hurt her back. He drove his passengers to the hospital as planned and the plaintiff was given medical attention. Freeman called a supervisor and stayed at the hospital until he came. The supervisor sent him to the garage where he reported the accident and received forms to fill out.

Nellie Cox was treated in the emergency room of the hospital. The supervisor was present while she was examined and took statements from her and her cousin. He suggested that she see a certain doctor and after he called another cab, she was taken to this doctor whom she did not know. After examining her, the doctor sent her to a hospital where she remained for five weeks. She continued under his care for a long period of time which included another five weeks of hospitalization three and one-half years later. At the time of the trial she still had pains in her legs and chest and was an out-patient at another hospital.

■■ The plaintiff first contends that the court erred in refusing to direct the defendant to produce the written statement made by Freeman immediately following the accident. The plaintiff had served the defendant with a notice to produce at the time of the trial "all statements of witnesses to the occurrence in question." Although the defendant made the statements of Cox and Giles available it refused to do the same with Freeman's statement. Supreme Court Rule 237(b) (Ill. Rev. Stat. 1969, ch. 110A, par. 237(b)) provides not only that "[t]he appearance at the trial of a party * * * or employee of a party may be required by serving the party with a notice * * *", but also that the notice "may require the production at the trial of documents or tangible things." Freeman's written statement comes within the purview of this rule. The fact that at the time of the trial he was no longer employed by the

defendant is irrelevant, since his statement as a witness to the occurrence was in the possession of the defendant and it was the defendant upon which the notice was served.

In *Golminas v. Fred Teitelbaum Construction Co.* (1969), 112 Ill.App.2d 445, 251 N.E.2d 314, this court considered whether statements made by employees of a corporate defendant to its attorney constituted privileged communications between the attorney and the corporation and therefore were not subject to production when demanded by another party. We rejected the view that the attorney-client privilege is so broad when applied to a corporate client as to encompass all communications made to the attorney by an employee regardless of his rank or corporate responsibilities. It was determined that only those employees who were in the control group of the corporation, that is, those in managerial or policy-making positions, came within the scope of the privilege as applied to a corporate defendant. In *Golminas*, as in the present case, the statements which were requested to be produced were not made by an employee with authority to make any judgment or decision as to what action might be taken by the defendant on the advice of its attorney. Freeman was in no sense a member of Yellow Cab's corporate control group.

■■ Nor does the fact situation in the case before us come within the exception noted in *Golminas* that an employee's communications might be privileged, even if he were not within the control group, if he is a defendant or is a person who may be charged with liability. Freeman appeared at the trial only as a witness; he was never named a party defendant. The trial against the Yellow Cab Company took place in February 1971, nearly seven years after the occurrence concerning which the statement was made. Any right of action the occupants of the cab might have had against Freeman had been long since barred by the statute of limitations. (Ill. Rev. Stat. 1969, ch. 83, par. 15.) The statement made by Freeman had been in the possession of the cab company from the time of the accident until the trial, and the company did not contend that it retained any right of action-over against him which could have been affected by the production of his statement.

The defendant resisted the plaintiff's repeated attempts to see the statement. In the trial court it asserted that the statement it had in its possession was Freeman's report to the company's insurance carrier and argued that this was a privileged communication. In this court the defendant asserts that the statement was Freeman's report to the Department of Public Works and Buildings of the State of Illinois as required by Ill. Rev. Stat. 1971, ch. 95½, par. 11—406, and that this statute provides that such a report is confidential and cannot be used as evidence

in any trial arising out of an accident (chapter 95½, paragraph 11—412). An unauthenticated, truncated copy of the purported report is included in an appendix to the defendant's brief. Only the first page of the report is filled out. This states the names and addresses of the parties, the owner of the cab and its license number, Freeman's age and the number of his driver's license, the place, date and time of the accident and the condition of the weather. It states that just one vehicle was in the accident, that no property was damaged, but that Cox suffered back and stomach injuries. The second page of the report which calls for a description of the accident, the completion of a diagram explaining how it took place and for pertinent information concerning it, is blank.

It is strange that Freeman would submit, or the Department of Public Works would accept, a report so incomplete as the one in the defendant's brief; and it is also strange that the defendant would have so vigorously opposed the production of a document as innocuous as this one-page report. We do not know if the defendant was accurate when it told the trial court that the Freeman statement in its possession was a report to its insurance carrier, or if it is accurate when it tells this court that the statement is a report to the department. We do not know if either version is correct, or if there might not be a third report—one made by Freeman to his employer; for it would be unlikely that a cab company, knowing that a passenger had been injured, and examined by a doctor of its own choosing and hospitalized on his recommendation, and facing the certainty of a substantial claim, would not have obtained for its own use a full report from its employee. But we do know that Freeman's credibility was crucial to the outcome of the case and protecting his credibility was important to the defendant.

██ Whatever statement Freeman may have given or report he may have made bore upon his credibility and was relevant to the plaintiff's case. Her attorney was entitled to see the document (or documents) so that he could evaluate its importance and determine what use to make of it. As it was made almost contemporaneously with the accident it may have contained information different than Freeman's testimony. It may have thus proved useful to the plaintiff's attorney for the purpose of impeachment or may have aided him in testing Freeman's credibility. Without it he was at a disadvantage in cross-examining Freeman, the sole occurrence witness for the defense. The plaintiff was prejudiced by not having the statement in court and the trial judge should have ordered its production. Consequently, the judgment must be reversed and the cause remanded for a new trial.

██ In view of the remandment, we shall consider the plaintiff's contention that the trial court erred in striking count II of her complaint.

Count II alleged general negligence (*res ipsa loquitur*). At the conclusion of the plaintiff's evidence the defendant moved to strike this count and the motion was sustained. Specific and general negligence counts may be submitted to a jury in a proper case (*Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill.App.2d 137, 210 N.E.2d 42), but whether the doctrine of *res ipsa loquitur* is applicable to the facts of the case is a question of law which must be decided in the first instance by the trial court. (*Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill.2d 345, 247 N.E.2d 877.) We find no error in the court's decision that under the facts of the case, as shown by the plaintiff's own evidence, the doctrine was inappropriately pleaded.

■■ The doctrine of *res ipsa loquitur* raises a rebuttable inference of the defendant's negligence. The elements of the doctrine are that the plaintiff's injury must have come from an accident which ordinarily would not occur unless someone had been negligent; the instrumentality that caused the injury must have been within the exclusive control of the defendant, and the plaintiff was exercising ordinary care for his own safety. *Metz v. Central Electric and Gas Co.* (1965), 32 Ill.2d 446, 207 N.E.2d 305; *Cobb v. Marshall Field & Co.* (1959), 22 Ill.App.2d 143, 159 N.E.2d 520.

An underlying reason for the *res ipsa* doctrine is that the defendant who is in charge of the instrumentality which caused the plaintiff's injury either knows the cause of the accident or has the best opportunity of ascertaining it, but the plaintiff having no such knowledge is compelled to allege negligence in general terms. (58 Am.Jur.2d, *Negligence*, § 482.) There is no need for an allegation of general negligence and no room for an inference of negligence under the *res ipsa* doctrine where there is direct evidence as to the precise cause of the injury, and all the facts and circumstances attending upon the occurrence appear. *Freer v. Rowden* (1969), 108 Ill.App.2d 335, 247 N.E.2d 635; *Decatur & Macon County Hospital Ass'n v. Erie City Iron Works* (1966), 75 Ill.App.2d 144, 220 N.E.2d 590; *Turner v. Wallace* (1966), 71 Ill.App.2d 160, 217 N.E.2d 11; 8 Am.Jur.2d, *Automobiles and Highway Traffic*, § 918.

In the present case the cause of the accident was as apparent to the passenger as to the carrier. The plaintiff's proof of the cause of the accident did not rest upon an inference arising from surrounding circumstances; her proof was direct, not circumstantial; the reasons for the occurrence were open and provable, not hidden and unexplicable. According to the testimony of the plaintiff and her cousin, it was caused either by the driver's negligent operation of the cab (excessive speed, following the auto in front of the cab too closely, failing to keep a proper lookout, etc.) or by the abrupt and unexpected stop of the auto ahead.

[Freeman's testimony that a third auto was involved cannot be considered in appraising the court's decision because the dismissal of count II took place before he testified.]

■■ Since the plaintiff's evidence showed that the accident was caused either by the driver's negligence or by an instrumentality not within the defendant's control, this is not a *res ipsa* case. If from the evidence it could be concluded that the accident was caused by the noncurrent negligence of the cab driver and the driver of the auto immediately ahead, the doctrine of *res ipsa loquitur* would be likewise inapplicable. *Yellow Cab Co. v. Hodgson* (1932), 91 Colo. 365, 14 P.2d 1081.

The remaining three contentions of the plaintiff are without merit. The verdict was not against the manifest weight of the evidence, the trial court did not err in not directing a verdict in her favor, and did not err in not entering judgment for her notwithstanding the verdict.

The judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

McNAMARA and McGLOON, JJ., concur.