BARRY SHERE, Plaintiff-Appellee, v. MARSHALL FIELD & Co., Defendant-Appellant.—(RICHARD C. VALENTINE, Appellant.)

(No. 59860;

First District (5th Division)—December 27, 1974.

*Opinion modified upon denial of rehearing March 27, 1975.*

Lord, Bissell & Brook, of Chicago (Richard E. Mueller, Richard C. Valentine, and John J. Berwanger, of counsel), for appellant.

Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago (Timothy M. O'Brien, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Richard C. Valentine, attorney for defendant, and defendant appeal from an order finding Valentine in contempt of court for his failure to produce a certain document as previously ordered by the trial court. The sole issue on appeal is whether or not the report in question is privileged.

Plaintiff filed suit to recover damages for certain bodily injuries sustained as the result of a fall in a store owned and operated by defendant.

Subsequent to the filing of this action, certain discovery procedures were undertaken. On July 11, 1973, the court entered a standard *"Monier"* type discovery order and a separate order requiring defendant to produce within 28 days any and all accident reports relative to the occurrence complained of.

On July 23, 1973, the trial court heard arguments on defendant's opposition to the motion to produce the accident reports. Specifically, defendant objected to the production of a report made by Paul Lamb, its director of safety. The report entitled "Report of Accident or Claim of Person Not An Employee" was written on a preprinted form supplied to defendant by Safety and Claims Service, an independent adjusting service retained by defendant and by defendant's excess-public-liability insurer. Although defendant objected to producing the report in toto, it offered to produce that part of the report which incorporated a statement made by plaintiff to defendant's store nurse. Defendant asserts that the report was not based on the personal observations of Lamb, but instead based "on hearsay information obtained primarily from plaintiff himself through the store nurse who administered first aid to plaintiff following the accident."

Over objection of defendant's counsel, the court entered an order requiring defendant to produce the entire report of the accident. To test the validity of the order, defendant, represented by its attorney, Richard C. Valentine, refused to produce the report. A contempt hearing was held on September 27, 1973, at which time Valentine again refused to produce the entire report. After inspecting the report, the trial judge ordered it sealed in an envelope and impounded by the clerk of the court. Subsequently, Valentine was held in contempt of court and fined $10.

Opinion

Defendant contends that the accident report comes within the protection of the attorney-client privilege and therefore is not properly subject to discovery. It further urges that the order which held Valentine in contempt of court was based on an erroneous production order and should therefore be reversed.

■■ It is well established that a corporation is as much entitled to the protection of the attorney-client privilege as an individual. (*Radiant Burners, Inc. v. American Gas Association* (7th Cir. 1963), 320 F.2d 314.) However, since privilege is an exception to the general duty to disclose, one who asserts privilege has the burden of proving it. A mere assertion that matter is privileged will not suffice. (*Monier v. Chamberlain*, 66 Ill.App.2d 472, 213 N.E.2d 425, *aff'd*, 35 Ill.2d 351, 221 N.E.2d 410.) Traditionally, the essence of the privilege accorded to communication between attorney and client, and the basis for its exemption from discovery is its confidentiality.

■■ In *People v. Ryan*, 30 Ill.2d 456, 197 N.E.2d 15, the supreme court extended this privilege to include not only statements made to attorneys, but also those made to one's insurance company. The court stated the reasoning for this extension at pages 460-461:

"We think the rationale of those cases upholding the privileged nature of communications between insured and insurer where the insurer is under an obligation to defend is more persuasive. * * * by the terms of the common liability insurance contract, the insured effectively delegates to the insurer the selection of an attorney and the conduct of the defense of any civil litigation. The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured. We believe that the same salutory [sic] reasons for the privilege as exist when the communication is directly between the client and attorney were present when Della Emberton made her statement to the investigator for her insurer. We therefore conclude that public policy dictates that the statement given by Della Emberton to her insurance carrier was clothed with the attorney-client privilege while in control of the insurer."

■■ In the instant case the statement was given by the Director of Safety to Safety and Claims Service. Safety and Claims Service is an independent contractor retained by both defendant and by defendant's excess-public-liability insurer to investigate and adjust claims. However, it is not an insurer. The attorney-client privilege has never been extended to cover communications to such third parties. There was no contractual obligation on the part of Safety and Claims Service to defend as there was in the *Ryan* case, and there is no reason to assume that it was an agent for the defendant's attorneys. We therefore find no reason to extend the privilege to the instant independent investigating and adjusting service.

■■■ Moreover, while corporations are entitled to the protection of the attorney-client privilege (*Radiant Burners, Inc. v. American Gas Association* (7th Cir. 1963), 320 F.2d 314), the protection does not apply to the statements of every corporate employee. (*Cox v. Yellow Cab Co.*, 16 Ill.App.3d 665, 306 N.E.2d 738; *Golminas v. Fred Teitelbaum Construction Co.*, 112 Ill.App.2d 445, 251 N.E.2d 314; *Day v. Illinois Power Co.*, 50 Ill.App.2d 52, 199 N.E.2d 802.) Rather, in Illinois, the attorney-client privilege as it applies to corporate clients is limited to the statements of those employees who fall within the control group of the

corporation. In *Day v. Illinois Power Co.,* 50 Ill.App.2d 52, 58, 199 N.E.2d 802, 806, the court explained what is meant by an employee who is within the control group:

> "The type of corporation employee transmitting information to the attorney for the corporation must be considered in determining whether such information is privileged. If an employee or investigator making reports to an attorney for the corporation is in a position to control or take a part in a decision about any action the corporation might take upon the advice of its attorney, he personifies the corporation and when he makes reports or gives information to the attorney, the attorney-client privilege applies. Such employee must have actual authority, not apparent authority, to participate in a contemplated decision."

In the instant case, defendant admits that the author of the instant report was not within the corporation's control group, and the record contains nothing to indicate otherwise. We must therefore conclude that Paul Lamb had no actual authority to participate in a decision regarding what action the corporation might take upon the advice of its attorney. In these circumstances, the instant statement was not privileged and was discoverable. The court's order holding Richard C. Valentine in contempt of court was not erroneous.

The judgment of the circiut court of Cook County is affirmed.

Affirmed.

DRUCKER and SULLIVAN, JJ., concur.