ROBERT F. JOHNSON, Plaintiff-Appellant, *v.* FRONTIER FORD, INC., *et al.*,
Defendants-Appellees.

Second District   No. 78-265

━━━

Opinion filed February 6, 1979.

Edward L. Miner, of Graves, Greenwald, Maier & Miner, of Rockford, for appellant.

Eugene E. Brassfield, of Brassfield, Cowan & Howard, of Rockford, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiff, Robert F. Johnson, and his attorney, John P. Graves, Jr., bring this interlocutory appeal from an order directing delivery to the trial court for its in camera review certain documents described as correspondence between Allstate Insurance Company and Attorney Graves and from the finding of contempt entered against Graves upon his failure to comply with that order.

The underlying case from which this appeal arises is a products liability action brought by plaintiff, represented by Attorney Graves, against Frontier Ford, Inc., and other defendants. On November 7, 1977, during the course of discovery, defendants caused a *subpoena duces tecum* to be served upon Allstate directing it to produce all of its records and investigative file, including statements, photographs, repair bills and other documents, relating to an automobile accident involving plaintiff

which occurred on October 18, 1975, and which is the subject of this action. While Allstate is not a party to this case, it was the insurer of plaintiff's automobile and by reason of certain payments made to him became subrogated to his right to recover for some of the items of damage to the automobile sought by plaintiff against defendants.

Allstate did not directly respond to the subpoena but, instead, turned its entire file over to plaintiff's attorney, John P. Graves, Jr. On December 19, 1977, in response to the subpoena Graves, on behalf of Allstate, met with defendants' counsel and produced for examination and copying the Allstate file, the contents of which he stated were represented to him by Allstate as being its entire file on the case. However, Attorney Graves withheld certain documents contained in the file which he described as correspondence between Allstate and his law firm. Defendants thereafter filed a motion requesting an order requiring plaintiff to produce the documents withheld by Graves, specifically demanding production of all correspondence between Allstate and Graves or his firm, and "any other documentation not heretofore produced pursuant to said subpoena duces tecum."

At a hearing of this motion on February 23, 1978, Graves stated to the court that he represented both Allstate and plaintiff Johnson and that the investigative file was given to him by Allstate as its attorney. He asserted the documents he had refused to produce for defendants from the Allstate file were privileged communications not subject to discovery. Counsel for defendants argued, however, that based upon his examination of the material which had been produced without objection by Graves, that other relevant documents may also not have been disclosed. Defendants' counsel requested that the trial court conduct an in camera examination of the Allstate file for it to determine whether the documents withheld by Graves were, in fact, privileged and not subject to disclosure. Graves was given an opportunity to prepare and file his affidavit in opposition to defendants' motion to produce the documents; he there stated that he was a duly licensed attorney of the State of Illinois and had responded on behalf of Allstate to the *subpoena duces tecum* served on it by defendants and that the documents he had refused to produce were correspondence between himself or his firm and Allstate exchanged at a time when an attorney-client relationship existed between them and were, therefore, privileged communications not subject to production. While the affidavit did not disclose when Attorney Graves had been retained by Allstate, at a further hearing of this matter held March 9, 1978, he stated he was retained on March 23, 1976, prior to service of the subpoena on Allstate by defendant.

The trial court thereupon directed production of the disputed documents for an in camera examination by the court for it to determine

whether or not they were subject to disclosure. Attorney Graves declined to do so and, at his suggestion, the trial court found him to be in contempt and this appeal followed.

Plaintiffs contend that the documents ordered to be produced for inspection by the court are subject to the attorney-client privilege referred to in Supreme Court Rule 201(b)(2) which provides, in part, that "[a]ll matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure."[1] (Ill. Rev. Stat. 1977, ch. 110A, par. 201(b)(2).) They argue that by virtue of Attorney Graves' representations to the trial court that the undisclosed documents contained in the Allstate file were privileged communications between attorney and client the issue has been determined and may not be reviewed by a court.

While the first sentence of Supreme Court Rule 201(b)(2) defines the relationship between the discovery rules and the attorney-client privilege, it does not define the elements of the privilege itself. Nor is there a statutory declaration in Illinois describing what communications between attorney and client are privileged. (*People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 535, 332 N.E.2d 649, 658; but *cf.* Ill. Rev. Stat. 1977, ch. 51, par. 5 (husband-wife), par. 5.1 (physician-patient), par. 5.2 (psychiatrist-patient), par. 48.1 (communications to clergymen) and par. 111 (reporters' privilege).) That salutary attribute of the relationship between an attorney and his client, however, is a long established rule of the common law. (81 Am. Jur. 2d *Witnesses* §172 n. 12 (1976).) The purpose and requirements of the privilege were described in *People v. Adam* (1972), 51 Ill. 2d 46, 48, 280 N.E.2d 205, 207, *cert. denied* (1972), 409 U.S. 948, 34 L. Ed. 2d 218, 93 S. Ct. 289:

> "The attorney-client privilege exists in order that one who is, or seeks to become a client, may consult freely with counsel without fear of compelled disclosure of information communicated by him to the attorney whom he has employed, or seeks to employ. The essentials of its creation and continued existence have been defined as follows: '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.' 8 Wigmore, Evidence, sec. 2292 (McNaughton Rev. 1961)." See *Taylor v. Taylor* (1977), 45 Ill. App.

---

[1] The second sentence of Rule 201(b)(2) relates to the work product privilege, which has a different basis than does the attorney-client privilege and is not relevant to the issues of this appeal.

3d 352, 359 N.E.2d 820; *People v. Doe* (1977), 55 Ill. App. 3d 811, 371 N.E.2d 334.

■■ *In re Estate of Busse* (1947), 332 Ill. App. 258, 266-67, 75 N.E.2d 36, 39-40, summarizes the four elements which must be established in order for the privilege to attach: (1) that an attorney-client relationship exists; (2) that the communication to the attorney be confidential; (3) that the communication relate to the matter for which the attorney was retained; and (4) that the communication be made during the course of the attorney-client relationship. In addition to these requirements, where a corporate client is involved as in this case, the "control group" theory also requires that the communication be with someone associated with the corporation who is in a position to control or take a substantial part in a decision about an action which the corporation might take upon the advice of the attorney. (*Golminas v. Fred Teitelbaum Construction Co.* (1969), 112 Ill. App. 2d 445, 448, 251 N.E.2d 314, 317; *Shere v. Marshall Field & Co.* (1974), 26 Ill. App. 3d 728, 327 N.E.2d 92.) If, then, these requirements are met, the attorney-client privilege attaches and under Supreme Court Rule 201(b)(2) the communications "are privileged against disclosure through any discovery procedure" (Ill. Rev. Stat. 1977, ch. 110A, par. 201(b)(2)). As the privilege attaches to the communication with his attorney, it is immaterial whether the client is or is not a party to the action in which the issue arose. 81 Am. Jur. 2d *Witnesses* §172 (1976).

It is also well established that to simply assert the existence of an attorney-client privilege is insufficient to demonstrate that one is entitled to its protection. In *Cox v. Yellow Cab Co.* (1975), 61 Ill. 2d 416, 419, 337 N.E.2d 15, 17-18, in which the court required the production of a confidential report form completed by one of defendant's employees, it stated that " '[o]ne who claims to be exempt by reason of privilege from the general rule which compels all persons to disclose the truth has the burden of showing the facts which give rise to the privilege. "His mere assertion that the matter is confidential and privileged will not suffice." ' (*Krupp v. Chicago Transit Authority* (1956), 8 Ill. 2d 37, 42.)" The court referred to some of the factors relevant to a determination of the issue in that case and held that "in the absence of proof of facts from which existence of the privilege can be ascertained, that production of the form should have been required." *Cox*, 61 Ill. 2d 416, 420, 337 N.E.2d 15, 18.

Dean McCormick has also addressed the sometimes elusive question of the application of the privilege to documents in the hands of an attorney:

"The application of the privilege to writings presents practical problems requiring discriminating analysis. *A professional communication in writing, as a letter from client to lawyer for example, will of course be privileged.* These written privileged

communications are steadily to be distinguished from preexisting documents or writings, such as deeds, wills, and warehouse receipts, not in themselves constituting communications between client and lawyer. As to these pre-existing documents two notions come into play. First, the client may make communications about the document by words or by acts, such as sending the document to the lawyer for perusal or handing to him and calling attention to its terms. These communications, and the knowledge of the terms and appearance of the documents which the lawyer gains thereby are privileged from disclosure by testimony in court. Second, on a different footing entirely stands the question, shall a lawyer who has been entrusted with the possession of a document by his client be subject to an order of court requiring him to produce the document at the trial or in pretrial discovery proceedings whether for inspection or for use in evidence? The policy of encouraging full disclosure does of course apply to encouraging the client to apprise his lawyer of the terms of all relevant documents, and the disclosure itself and the lawyer's knowledge gained thereby as we have seen is privileged. It is true also that placing the documents in the lawyer's hands is the most convenient means of disclosure. *But the next step, that of adding to the privilege for communications a privilege against production of the pre-existing documents themselves, when they would be subject to production if still in the possession of the client, would be an intolerable obstruction to justice. To prevent the court's gaining access to a relevant document a party would only have to send it to his lawyer.* So here the principle is controlling: if a document would be subject to an order for production if it were in the hands of the client it will be equally subject to such an order if it is in the hands of his attorney. An opposite conclusion would serve the policy of encouraging the client to make full disclosure to his lawyer right enough, but reasonable encouragement is given by the privilege for communications about documents, and the price of an additional privilege would be intolerably high. There are other doctrines which may impel a court to recognize a privilege against production of a pre-existing document, but not the doctrine of privilege for lawyer-client communications." (Emphasis added.) McCormick, Evidence §89, at 184-85 (2d ed. 1972).

In a similar vein, the court in *Radiant Burners, Inc. v. American Gas Association* (7th Cir. 1963), 320 F.2d 314, 324, stated:

"Certainly, the privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure.

Likewise, it seems well settled that the requisite professional relationship is not established when the client seeks business or personal advice, as opposed to legal assistance.

\* \* \*

A corporation is entitled to the same treatment as any other 'client'—no more and no less. If it seeks legal advice from an attorney, and in that relationship confidentially communicates information relating to the advice sought, it may protect itself from disclosure, absent its waiver thereof."

The potential for misapplication of the attorney-client privilege as illustrated by *McCormick* and by the court in *Radiant Burners* is demonstrated in the instant case. When disclosure of the Allstate investigative file was sought by defendants, Allstate simply turned everything over to Attorney Graves who then decided which documents were to be disclosed and which were to be considered privileged communications with counsel. If, however, Allstate's investigation commenced October 18, 1975, when the accident occurred, it is apparent the privilege could not attach to any documents existing prior to March 23, 1976, when Graves stated he was retained, nor could it attach to any of the contents of the file which do not meet the tests we have earlier discussed.

■■ As shown in *Cox*, one who claims the privilege has the burden of proving its existence by facts which demonstrate to the court that the elements of the privilege were present and attached to the disputed documents. While an all-inclusive formula for such proof is not possible, evidence relating to the factors we have discussed is essential and is lacking in this case. In the absence of other sufficient proof of the claimed privilege the in camera examination of the disputed documents ordered by the trial court appears to us to be a reasonable effort by it to find a basis to protect the privilege if it existed, and to prevent its application where it might not exist. See, *e.g., Shere v. Marshall Field & Co.* (1974), 26 Ill. App. 3d 728, 730, 327 N.E.2d 92, 93; see also Ill. Rev. Stat. 1977, ch. 110A, par. 415(f).

As the refusal to submit the documents to the trial court was without a lawful basis, the order finding Attorney Graves in contempt was properly entered and will be affirmed.

Affirmed.

GUILD, P. J., and RECHENMACHER, J., concur.