*In re* MARRIAGE OF REBECCA KAY DECKER, Petitioner-Appellee, and PAUL R. DECKER, Respondent (Kristen H. Fischer, Contemnor-Appellant).

Fourth District   No. 4—90—0488

Opinion filed October 4, 1990.—Modified on denial of rehearing November 16, 1990.

Shari D. Goggin-Ward, of Kirtley-Pavia-Marsh, P.C., of Urbana, and Charles L. Palmer, of Franklin, Flynn & Palmer, of Champaign, for appellant.

William D. McGrath, of McGrath & McGrath, of Champaign, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

Respondent's attorney, Kristen Fischer, was held in direct civil contempt for refusing to obey the trial court's order that she disclose, either in open court or *in camera*, any information she possessed as to the intent of her client, Paul Decker, to commit a crime. On appeal, contemnor argues she cannot be compelled to divulge any such information because either it is protected by the attorney-client privilege or she has the absolute discretion to refuse disclosure under Rule 4–101 of the Code of Professional Responsibility (107 Ill. 2d R. 4–101).

This issue arises in an all-too-frequent and tragic context. By the terms of a child custody order, petitioner was awarded custody of the minor daughter. Respondent was granted visitation rights. He exercised those rights on July 13, 1990, but failed to return the child to her mother at the appointed hour.

Because the whereabouts of respondent and the child were still unknown as of July 17, 1990, petitioner sought immediate relief from the trial court. Although the court quashed petitioner's subpoena requesting disclosure of respondent's current location, counsel was ordered to divulge any information she had as to her client's "intent to commit a crime," because it had become obvious respondent had absconded with the child in apparent violation of the child custody order and the Illinois child abduction statute. (Ill. Rev. Stat. 1989, ch. 38,

par. 10—5.) Citing the attorney-client privilege, counsel refused to respond and declined the additional opportunity to reveal the information *in camera* so that the court could determine if a privilege existed. Upon her continued refusal to answer, counsel was held in direct civil contempt and ordered incarcerated until she purged herself by complying with the order. Sentence was stayed pending appeal.

■ Contemnor initially argues any information she possesses is "protected" by the attorney-client privilege because it is confidential. This argument is without merit. The United States Supreme Court has repeatedly held the attorney-client privilege does not extend to communications between an attorney and a client where the purpose of that communication is to further a crime or to discuss future intended illegality. (*Clark v. United States* (1933), 289 U.S. 1, 77 L. Ed. 993, 53 S. Ct. 465.) Recently the Court stated:

> "The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice—'ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*.' [Citations.] It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy,' ibid., between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." (Emphasis in original.) (*United States v. Zolin* (1989), 491 U.S. 554, 562-63, 105 L. Ed. 2d 469, 484-85, 109 S. Ct. 2619, 2626.)

In the same vein is the following: "An attorney's duty of confidentiality, which totally covers a client's admission of guilt, does not extend to a client's announced plans to engage in future criminal conduct." *Nix v. Whiteside* (1986), 475 U.S. 157, 174, 89 L. Ed. 2d 123, 139, 106 S. Ct. 988, 998.

The focus is not, as contemnor would suggest, on whether the communications were intended to be confidential. The issue is whether they are privileged. Were it otherwise, an individual could always immunize any comment he made simply by communicating it to his attorney. Since the privilege may never be invoked to bar disclosure of communications in which a client seeks legal assistance to obtain illegal ends (*In re Marriage of Granger* (1990), 197 Ill. App. 3d 363, 554 N.E.2d 586), any communication from respondent to contemnor concerning his "intent to commit a crime" cannot be shielded

from disclosure by mere invocation of the attorney-client privilege.

■ Contemnor also argues that Rule 4—101(d) of the Code of Professional Responsibility grants her the absolute right to refuse to disclose this information. Rule 4—101(d) provides, in pertinent part:

"A lawyer may reveal

(1) confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them;

(2) confidences or secrets when permitted under disciplinary rules or required by law or court order;

(3) the intention of a client to commit a crime in circumstances other than those enumerated in paragraph (c) above." 107 Ill. 2d Rules 4—101(d)(1), (d)(2), (d)(3).

In contemnor's view, because she is vested with the initial discretion to determine whether to reveal a client's stated intent to a commit a crime, that discretion, which is not subject to review, is absolute and she may not be ordered to disclose the material, even *in camera*, under any circumstances. At oral argument, contemnor conceded that under her theory, greater protection over disclosure of client communications would be afforded by the disciplinary rule than has ever been recognized under the common law attorney-client privilege.

We find contemnor's argument unpersuasive for several reasons. In the first instance, if the attorney has complete discretion to reveal information described in the rule, it cannot be privileged, as a matter of law, because it is necessarily subject to disclosure at the "whim" of the attorney. If the information were indeed privileged, it could never be legitimately disclosed absent consent of the client. 8 J. Wigmore, Evidence §2291 (McNaughton rev. 1961).

In addition, while an attorney may be under no affirmative duty to reveal a client's intent to commit the crime of child abduction (see Ill. St. Bar Ass'n, Opinion 87—9 (Mar. 11, 1988)), there is a vast difference between ethically declining to volunteer confidential information and refusing to disclose nonprivileged communications in response to a court order.

■ It is this crucial distinction which is fatal to contemnor's argument. Rule 4—101, like other ethical rules governing the practice of law, defines the duty of an attorney to a client. In context, the rule clarifies that no ethical obligation of an attorney to a client is breached by disclosure of information under circumstances identified in the rule irrespective of whether disclosure is made in the discretion of the attorney or at the insistence of the court. Nothing in the language of the rule supports the contention an attorney "may" resist

court-ordered disclosure of nonprivileged information. To the contrary, Rule 4—101(d)(2) explicitly states that disclosure may be compelled. Contemnor's interpretation of the language of the rule distorts its plain meaning.

■ Contemnor's corollary argument, that disclosure may not be required even *in camera,* is an unprecedented departure from the established law of attorney-client communications. The party asserting an attorney-client privilege bears the burden of establishing all elements of the privilege. One who claims to be exempt by reason of privilege from the general rule which compels all persons to disclose the truth has the burden of showing the facts which give rise to the privilege. The mere assertion that the matter is confidential and privileged will not suffice. (*Cox v. Yellow Cab Co.* (1975), 61 Ill. 2d 416, 337 N.E.2d 15; *McDonald's Corp. v. Levine* (1982), 108 Ill. App. 3d 732, 439 N.E.2d 475.) An *in camera* examination of the disputed materials or communications is a reasonable way to protect the privilege, if it exists, or to prevent groundless assertions of the privilege, if it does not. *Johnson v. Frontier Ford, Inc.* (1979), 68 Ill. App. 3d 315, 386 N.E.2d 112; *Zolin,* 491 U.S. 554, 105 L. Ed. 2d 469, 109 S. Ct. 2619.

■ Having considered contemnor's arguments, we conclude no privilege attaches to any communications between respondent and counsel concerning respondent's intent to commit a crime. Irrespective of the discretion vested in contemnor by Rule 4—101, disclosure of such communications may be compelled by the court. Further, an *in camera* proceeding is an appropriate method to provide protection to communications which may, in the court's determination, be subject to a privilege in whole or in part.

Contemnor also raises several arguments concerning the evidentiary value of the information sought. We need not consider these, however, because the issue before us involves only an attorney's duty to disclose information when directed to do so by the court, not the information's relevance or admissibility.

■ Likewise, petitioner's argument that contemnor can be required to disclose the whereabouts of her client, if she knows, is also not before this court on appeal. The trial court, by interlocutory order, quashed petitioner's original demand for this information as "too vague." As that ruling is not final, it is subject to modification. See *Jafarian-Kerman v. Jafarian-Kerman* (Mo. App. 1967), 424 S.W.2d 333; *Falkenhainer v. Falkenhainer* (1950), 198 Misc. 29, 97 N.Y.S.2d 467; *Dike v. Dike* (1968), 75 Wash. 2d 1, 448 P.2d 490; *In re Jacqueline F.* (1978), 94 Misc. 2d 96, 404 N.Y.S.2d 790, *aff'd* (1979), 47

N.Y.2d 215, 391 N.E.2d 967, 417 N.Y.S.2d 884.

■ Contemnor also requests that this court vacate the order of incarceration because her refusal to comply with the trial court's order was in good faith and made to protect her client's confidences and secrets. The record supports contemnor's assertion that she was acting in good faith, and we recognize that in some circumstances, such as here, contempt procedures are an appropriate method by which to test orders which are collateral to the principal action. Accordingly, we conclude the stay of sentence previously entered should be continued pending further hearing before the trial court on remand, at which time contemnor should be permitted anew to purge her contempt so as to suffer no further disability.

■ In her petition for rehearing, contemnor argues that our decision is in direct conflict with a recent opinion issued by the Second District Appellate Court in *Cesena v. Du Page County* (1990), 201 Ill. App. 3d 96, 558 N.E.2d 1378. We disagree. In the first instance, the issue in *Cesena* was whether an attorney could be held in contempt for refusing to disclose information which was expressly subject to an attorney-client privilege. In this case, no such privilege exists. Furthermore, a client's intent to commit a crime, unlike a client's identity in "unique and unusual" circumstances, is not a "confidence" or "secret" as those terms are defined under the Code of Professional Responsibility. To qualify as such, a communication must be made within the ambit of a legitimate professional relationship. Announcing plans to engage in future criminal conduct or seeking legal advice in furtherance of illegal ends are always outside the scope of any valid attorney-client relationship. Finally, given the court's holding that the client in *Cesena* waived any privilege against disclosure, the court's remark that an attorney has the discretion to refuse to reveal this information under Rule 4—101 is broadly worded *dictum*, the validity of which we need not speculate about.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed and remanded.

KNECHT, P.J., and GREEN, J., concur.