CONSTANCE S. RAPPS, Plaintiff-Appellee, v. FRANCIS L. KELDERMANS, Independent Adm'r of the Estate of Jean McFeeley Moore, Deceased, Defendant-Appellant (Thomas F. Tobin, Contemnor-Appellant).

First District (3rd Division)   No. 1—92—2757

Opinion filed December 22, 1993. '

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael A. Pollard, Andrew J. Boling, and David A. Nelson, of counsel), for appellants.

McBride, Baker & Coles, of Chicago (Robert W. Queeney, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

Defendant Francis L. Keldermans, the administrator of the estate of Jean McFeely Moore, and contemnor, who was defendant's attorney, appeal from an order finding contemnor in contempt for the failure to produce documents. The documents at issue are statements given by defendant's decedent and a drawing, which were obtained by a firm retained by decedent's insurer to investigate plaintiff's claim. Defendant and contemnor argue that the statements were privileged. We reverse and remand.

The issue in this case is whether the attorney-client privilege can apply to a statement given by an insured to an independent contractor retained by the insurer to investigate a claim.

Plaintiff sued decedent for personal injuries received in an alleged collision between plaintiff and an automobile driven by decedent. Wausau Insurance Company was issued a subpoena for the following records:

"All notes, statements and notices of claims and other documents relating to your Claim No. Y59235100EM, and/or an accident on June 10, 1985 at the intersection of Erie Street and Harlem Avenue, Oak Park, Illinois."

Decedent died during the pendency of the case, and the complaint was amended to substitute the administrator of her estate as defendant.

Plaintiff filed a motion to compel defendant to produce documents relating to the accident. The motion alleged that on September 26, 1988, defendant responded to the subpoena and plaintiff's request to produce and that defendant provided a list of the documents in the insurer's "investigation file" being withheld pursuant to privilege. Among the withheld documents were November 6, 1985, documents from decedent to recipients whose identities were not disclosed. The documents were described as "written statement," "hand written statement," and "original hand written statement." Also listed was a "[d]rawing of the subject incident" with no date or author. Plaintiff alleged that the written statements were given by decedent to Daniel J. Murphy at a time when he was employed by C.T. Smith, Inc., an independent contractor retained by Wausau Insurance Company to investigate claims.

Also attached was the affidavit of Murphy, who swore to the

following. In the course of his duties as an employee of C.T. Smith, he interviewed decedent and obtained or took a statement from her regarding an accident in which it was alleged that an automobile driven by her struck a pedestrian. He was not an employee of Wausau.

On April 30, 1991, plaintiff's motion to compel was granted and defendant was granted 28 days in which to tender the November 6, 1985, documents and the undated drawing.

Defendant stated in a motion for reconsideration that the diagram that was ordered to be produced was drawn by Murphy.

Defendant filed the following affidavits in support of the motion for reconsideration. Charles T. Smith swore to the following. His firm served as Wausau's agent for the investigation and adjustment of claims made against Wausau's insured. At all times, he considered his firm to be working as an agent for the interests of Wausau and its insured. In some cases, the firm was authorized to settle cases within parameters established by Wausau. In some cases, the firm would recommend the amount of the reserve established for a given claim. His firm was retained in 1985 by Wausau to perform various tasks in connection with plaintiff's claim against defendant. The investigative work done on behalf of defendant was performed in accordance with Wausau's contractual obligation to defend defendant. The nature and manner of the investigative work performed by his firm was controlled by Wausau. Another employee of his firm worked with a law firm to investigate this claim after litigation had been instituted.

The affidavit of Paul Rutherford swore to the following. He was previously employed by Wausau. In 1985 and 1986, Wausau frequently retained C.T. Smith as its agent to perform various investigative adjusting tasks with respect to claims filed against Wausau's insureds. Wausau specifically directed and controlled the nature of the work performed by C.T. Smith and the manner in which the work was performed. In some cases, C.T. Smith was responsible only for performing routine investigative tasks. In other cases, C.T. Smith was authorized by Wausau to settle cases within the parameters of settlement authority established by Wausau. In some instances, Wausau relied on C.T. Smith's opinions and consultations in respect to establishing reserves to be placed on each loss. He reviewed the claims file, and decedent was an insured covered by a Wausau insurance policy. The contract of insurance required that the insured cooperate with Wausau in regard to the investigation and defense of any claims made against them.

Rutherford further swore to the following. C.T. Smith was contacted and retained by Wausau on June 18, 1985, which was the

first day that Wausau received notice of the claim asserted by plaintiff. Acting on Wausau's behalf as its agent, C.T. Smith was instructed to obtain statements from the parties to the incident. Murphy obtained a written statement from decedent. C.T. Smith played an active role in the handling of the claims file in this case. Employees of C.T. Smith made recommendations concerning establishment of reserves to cover the claim filed by plaintiff. The firm continued to work as Wausau's agent on behalf of defendant after the lawsuit was filed. The firm began to report directly to a law firm retained to defend defendant. The firm continued to act on behalf of Wausau after Murphy obtained the statement from decedent. For example, C.T. Smith would communicate directly with decedent's husband to obtain information necessary to investigate and defend the claim.

Plaintiff filed a petition for rule to show cause why defendant's attorney, Thomas F. Tobin, should not be held in contempt of court for the failure to comply with the order to produce the documents.

The trial court stated in an order that it had previously ruled that the documents were not privileged based upon the decision in *Shere v. Marshall Field & Co.* (1974), 26 Ill. App. 3d 728, 327 N.E.2d 92. The court also held defendant's attorney in contempt of court for the refusal to turn over the documents and fined him one dollar. The fine was stayed pending appeal. Contemnor and defendant appealed from the order of contempt.

Appellants argue on appeal that the documents were protected by the attorney-client privilege even if C.T. Smith was an independent contractor and not an employee of the insurer.

The Illinois Supreme Court has held that public policy dictated that a statement given by the client to her insurer comes within the attorney-client privilege while the statement is in the control of the insurer. (*People v. Ryan* (1964), 30 Ill. 2d 456, 461, 197 N.E.2d 15.) In *Ryan*, an attorney had been held in contempt for the failure to produce a signed statement given by his client to an investigator investigating the automobile collision in which the client was involved. The statement was placed in the files of the client's insurer. The court reasoned that communications between the insurer and the insured were normally made by the insured to a layman and in many cases no lawyer would actually be retained for the purpose of defending the insured but that, by the terms of the common liability insurance contract, the insured effectively delegated to the insurer the selection of an attorney and the conduct of the defense of any civil litigation. (*Ryan*, 30 Ill. 2d at 460.) Under such circumstances, the court held that the insured could properly assume that the

communication was made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured. (*Ryan*, 30 Ill. 2d at 460-61.) The court found that the same reasons for the privilege as existed when the communication was directly between the client and the attorney were present when the client made her statement to the investigator for her insurer. *Ryan*, 30 Ill. 2d at 461.

In *Shere v. Marshall Field & Co.* (1974), 26 Ill. App. 3d 728, 327 N.E.2d 92, an attorney for defendant was held in contempt of court for the failure to produce an accident report made by defendant store's director of safety. Plaintiff had alleged personal injury as a result of a fall in defendant's store. The report was written on a pre-printed form supplied to defendant by an independent adjusting service retained by defendant and by defendant's excess public liability insurer. The court held that because the service, which was an independent contractor, was not an insurer and therefore had no obligation to defend defendant, the attorney-client privilege could not be extended to cover communications to such third parties. (*Shere*, 26 Ill. App. 3d at 731.) The court found no reason to assume that the independent contractor was an agent for defendant's attorneys. *Shere*, 26 Ill. App. 3d at 731.

*Lower v. Rucker* (1991), 217 Ill. App. 3d 1, 4, 576 N.E.2d 422, rejected *Shere*. In *Lower*, an attorney appealed from an order finding him in contempt for the failure to produce a post-accident statement made by one of his clients to an employee of the adjustment company retained by the client's automobile liability insurer. Plaintiff sued defendant in connection with a collision in which defendant and his wife were involved. Plaintiff argued that the statements made by defendant and his wife were made before counsel was retained by the insurer to represent the husband so that the statements were not subject to the attorney-client privilege. The trial court ordered that the wife's statement be produced because it was not privileged.

The *Lower* court noted that when the wife made her statement the possibility existed that, as the co-owner of the car involved in the accident, she would be made a defendant in lawsuits that might arise as a result of the accident, and she could reasonably assume that statements made to her insurer would be transmitted to an attorney for the protection of her own interests. (*Lower*, 217 Ill. App. 3d at 3.) The wife's statement was made to an independent contractor retained by the insurer to conduct the investigation of the accident. (*Lower*, 217 Ill. App. 3d at 3.) The court found that the wife's statement to the independent contractor was privileged because there was no meaningful distinction from a statement given to the investigator's employer, the insurance company. *Lower*, 217 Ill. App. 3d at 4.

■ We also find that there is no meaningful distinction between an independent contractor and an employee of an insurer in connection with the applicability of the attorney-client privilege to a statement given by the insured in connection with the investigation of a claim. Both an employee and an independent contractor are retained by the insurer. In the case of the insured giving a statement to an independent contractor, the possibility that the statement will ultimately be used by an attorney chosen by the insurer to defend the insured is not less than in the case of the insured giving a statement to an insurer's employee.

■ The *Shere* analysis that the investigator had no contractual obligation to defend the insured does not reconcile the fact that the insured in *Ryan* gave a statement to the investigator and not directly to the insurer. Also, in this case, unlike *the Shere* case, there was no director of safety accident report prepared for a corporate defendant before a claim was made and which could be used for internal purposes by the defendant in addition to supplying information which the insurer could use in defending the insured. The element of confidentiality was missing. We agree with the reasoning in *Lower* and hold that the statements and diagram in this case were protected by the attorney-client privilege.

Plaintiff also argues, as a basis for upholding the trial court, that decedent was not an insured.

Rutherford, a former employee of the insurer, filed an affidavit that stated that decedent was an insured covered by a policy issued by the insurer and that the policy required the insured to cooperate with the insurer "in regard to the investigation and defense of any claims made against them." The affidavit also stated that the investigating firm was contacted by the insurer the first day that the insurer received notice of plaintiff's claim and that the firm was instructed by the insurer to obtain statements from the parties. We find that the affidavit was sufficient to establish the element that there existed a duty to defend, although it would have been preferable for defendant to have presented the trial court with a copy of the insurance policy.

■ Plaintiff also argues that defendant did not establish the elements of the attorney-client privilege. Plaintiff cites *McDonald's Corp. v. Levine* (1982), 108 Ill. App. 3d 732, 744-45, 439 N.E.2d 475, which recited the elements of the attorney-client privilege:

"(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from

disclosure by himself or by the legal adviser, (8) except the protection be waived."

However, in cases involving communications between an insured and insurer, in order for the attorney-client privilege to apply, it has been held that a party need only prove: (1) the identity of the insured; (2) the identity of the insurance carrier; (3) the duty to defend the lawsuit; and (4) that a communication was made between the insured and an agent of the insurer. *Hyams v. Evanston Hospital* (1992), 225 Ill. App. 3d 253, 257, 587 N.E.2d 1127.

■ It is clear that in this case, just as in the *Ryan* case, the insured decedent could properly assume that the information which she gave to her insurer's investigator would be transmitted to an attorney for the protection of her interests. All the requirements for the attorney-client privilege to apply have been met. Therefore, the attorney-client privilege is extended to the communications made to the insurer's investigator in this case.

Plaintiff next argues that defendant failed to meet his burden because the facts before the trial court did not establish that: the statements and drawing were dictated or written by decedent during her interview with the investigator; the documents were created or maintained by decedent, the investigator, and/or the insurer in confidence; and decedent considered that the investigator was an agent for her insurer or attorney. Plaintiff does not provide authority for this argument but apparently extrapolates from the elements required to establish the privilege in the case of communication directly to an attorney.

It was established here that decedent gave information to the insurer's investigator. It can be assumed that decedent did so in confidence as the firm was investigating on her insurer's behalf. There is no reason to mandate the further elements asserted above by plaintiff. If such statements to the insurer's agent could possibly be used ultimately in defense of decedent, the statements deserve to be clothed with the attorney-client privilege.

■ Plaintiff's argument that defendant failed to establish that the privilege was not subsequently waived is rejected. *McDonald's* (108 Ill. App. 3d at 744) stated that the party asserting the privilege had the burden to establish all the elements of the privilege, but one of the elements was not the absence of subsequent waiver. The privilege exists except when the client waives the protection. *People v. Harris* (1991), 211 Ill. App. 3d 670, 675, 570 N.E.2d 593; *McDonald's*, 108 Ill. App. 3d at 744-45.

Plaintiff also argues that the privilege was waived because defendant introduced decedent's statements concerning the accident to a

police officer and therefore any Dead Man's Act privilege (Ill. Rev. Stat. 1991, ch. 110, par. 8—201) against testimony as to the event was waived, including the statements made to the insurer's investigator. But any privilege under the Dead Man's Act is separate from the attorney-client privilege, and therefore this argument for waiver is rejected.

■ Plaintiff next argues that the privilege should be waived because defendant argued in his motion for summary judgment that, through the operation of the Dead Man's Act (Ill. Rev. Stat. 1991, ch. 110, par. 8—201), there was no competent evidence of the accident and because defendant meanwhile refused to produce the insured's statement that presumably contained competent admissions fatal to the argument in the motion for summary judgment. Plaintiff also argues that it would be fundamentally unfair for defendant to use any attorney-client privilege while at the same time seek summary judgment based upon plaintiff's alleged inability to prove her case. This argument is rejected on the basis that defendant has legitimately attempted to prevent disclosure of privileged documents; the attempt to assert a privilege should not waive the privilege because of the alleged inability of plaintiff to testify to the accident involving a person who subsequently died.

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

RIZZI and GREIMAN, JJ., concur.